UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X                    CERTIFICATION OF
In Re:  SunEdison, Inc., et al.,                                                  FOREIGN MAILING
and Standard Solar, Inc..

                                                                                  Case No. 16-10992-smb
------------------------------------------------------------X
Plaintiff,

SunEdison Litigation Trust
                                                                                  Adversary Proceeding
v.                                                                                Case No. 18-1248

Defendant,

Abogados Y Asesores S. De R.L,
Aguilar Castillo Love
------------------------------------------------------------X


            I, VITO GENNA, CLERK OF THE UNITED STATES BANKRUPTCY COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK, DO HEREBY CERTIFY THAT ON THE __10TH__
DAY OF __OCTOBER__2018.  THE THIRD AMENDED COMPLAINT, THIRD SUMMONS AND
NOTICE OF PRETRIAL CONFERENCE IN AN ADVERSARY PROCEEDING AND TRANSLATED
COPIES PROVIDED BY THE FIRM WAS SERVED BY FEDEX EXPRESS MAIL,  A COPY OF
EACH THEROF, SECURELY ENCLOSED IN AN ENVELOPE ADDRESSED TO:


Abogados Y Asesores S. De R.L.
Aguilar Castillo Love
Edificio Rofisa II
Col. Lomas del Guijarro Sur
Calle Barcelona, Bloque C, Lote 15
Tegucigalpa, MDC
Honduras


                        _____S/VITO GENNA_____
                        CLERK OF THE BANKRUPTCY COURT


                        By:___S/DEIRDRA CANTRELL_____
                              DEPUTY CLERK

DATED:  NEW YORK, NEW YORK
        October 11, 2018

FedEx Ship Manager - Print Your Label(s)

ORIGIN ID:SXYA        (212) 284-4069
VITO GENNA
UNITED STATES BANKRUPTCY COURT SDNY
ONE BOWLING GREEN

NEW YORK, NY 10004 US
SIGN: VITO GENNA

SHIP DATE: 09OCT18
ACTWGT: 0.10 LB
CAD: 110015479/INET4040

BILL SENDER
NO EEI 30.37(a)

TO **ABOGADOS Y ASESORES S. DE R.L.**
**EDIFICIO ROFISA II**
**COL. LOMAS DEL GUIJARRO SUR**
**CALLE BARCELONA, BLOQUE, LOTE 15**
**TEGUCIGALPA  MDC**                          **(HN)**
11111111111111
INV:
PO:                    REF: 57533-0001          DEPT:

552J188FB/DC/A5

FedEx
Express

**E**

TRK# 7734 3261 1921          **INTL PRIORITY**
0430

-HN



After printing this label:
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH

LEGAL TERMS AND CONDITIONS OF FEDEX SHIPPING DEFINITIONS. On this Air Waybill, "we", "our", "us", and "FedEx" refer to Federal Express Corporation, its subsidiaries and branches and their respective employees, agents, and independent contractors. The terms "you" and "your" refer to the shipper, its employees, principals and agents. If your shipment originates outside the United States, the contract of carriage is with the FedEx subsidiary, branch or independent contractor who originally accepts the shipment from you. The term "package" means any container or envelope that is accepted by us for delivery, including any such items tendered by you utilizing our automated systems, meters, manifests or waybills. The term "shipment" means all packages which are tendered to and accepted by us on a single Air Waybill. AIR CARRIAGE NOTICE. Air transportation, as amended, may be applicable. The Warsaw Convention, as amended, will then govern and in most cases limit FedEx's liability for loss, delay or damage to your shipment. The Warsaw Convention, as amended, limits FedEx liability. For example in the U.S. liability is limited to $9.07 per pound (20$ per kilogram), unless a higher value for carriage is declared as described below and you pay any applicable supplementary charges. The interpretation and operation of the Warsaw Convention's liability limits may vary in each country. There are no specific stopping places which are agreed to and FedEx reserves the right to route the shipment in any way FedEx deems appropriate. ROAD TRANSPORT NOTICE. Shipments transported solely by road to or from a country which is a party to the Warsaw Convention or the Contract for the International Carriage of Goods by Road (the "CMR") are subject to the terms and conditions of the CMR, notwithstanding any other provision of the Air Waybill to the contrary. Fulchase shipments transported solely by road are not provide cargo liability or air/deck insurance; however you may purchase insurance from a third party provider. LIMITATIONS ON LIABILITY. If not governed by the Warsaw Convention, the CMR, or other international treaties, laws, other government regulations, orders, or requirements, FedEx's maximum liability for damage, loss, delay, shortage, mis-delivery, nondelivery, misinformation or failure to provide information in connection with your shipment is limited by this Agreement and as set out in the terms and conditions of carriage or tariff applicable to your shipment, but in no event shall FedEx's liability exceed the actual value of the shipment, as limited above, nor the declared value for carriage, whichever is less. CARRIER and MAXIMUM LIMITATION OF LIABILITY. If you wish to increase the limitation of liability above the standard limitations noted below you may declare a higher value for carriage which may require an additional charge. FedEx's maximum liability for damage, loss, delay, shortage, mis-delivery, nondelivery, misinformation, or failure to provide information in connection with your shipment is limited by this Agreement and as set out in the terms and conditions of carriage or tariff applicable to your shipment, but in no event shall FedEx's liability exceed the actual value of the shipment. Furthermore, we won't be liable for any damages, whether direct, incidental, special, or consequential in excess of the declared value for carriage, whether or not FedEx had knowledge that such damages might be incurred including but not limited to loss of income or profits. Please refer to the contract and conditions for the declared value for carriage if not declared. The declared value for carriage represents our maximum liability in connection with a shipment, including but not limited to any loss, damage, delay, mis-delivery, nondelivery, misinformation, or failure to provide information. In each shipment for loss of goods, the right to damages against us shall be extinguished unless an action is brought within two years. For the current limits for carriage or shipment refer to our standard terms and conditions of carriage. FedEx Service Guide is also available upon request. FEDEX WON'T BE LIABLE FOR ANY CLAIM IN EXCESS OF THE DECLARED VALUE FOR CARRIAGE (INCLUDING BUT NOT LIMITED TO LOSS OF INCOME OR PROFITS) OR THE ACTUAL VALUE OF THE SHIPMENT, IF LOWER, WHETHER OR NOT FEDEX HAD ANY KNOWLEDGE THAT SUCH DAMAGES MIGHT BE INCURRED. FedEx won't be liable for your sale or omission. FedEx is not liable for your acts or omissions including but not limited to incorrect declaration of cargo, improper or insufficient packing, securing, marking or addressing of the shipment, or for the acts or omissions of the recipient or anyone else with an interest in the shipment. We won't be liable for loss, damage, delay, shortage, mis-delivery, non-delivery, misinformation or failure to provide information in connection with shipments of cash, currency or other prohibited items or in instances beyond our control, such as acts of God, perils of the air, weather conditions, mechanical delays, acts of public enemies, war, strike, civil commotion, or acts or omissions of public authorities (including customs and health officials) acting with actual or apparent authority. NO WARRANTY. We make no warranties, express or implied. CLAIMS FOR LOSS, DAMAGE OR DELAY. ALL CLAIMS MUST BE MADE IN WRITING AND WITHIN STRICT TIME LIMITS, SEE OUR TARIFF, APPLICABLE FEDEX SERVICE GUIDE, OR STANDARD CONDITIONS OF CARRIAGE FOR DETAILS. The Warsaw Convention provides a procedure for notification of claims. We may pay your claim if you have not complied with these conditions. RIGHT TO INSPECT. Your shipment may be, on our own option, opened and inspected by us or government authorities at any time. MANDATORY LAW. Insofar as any provision contained or referred to in this Air Waybill may be contrary to any applicable international treaties, laws, government regulations, orders, or requirements, such provisions shall remain in effect as part of the contract to the extent that they are not overridden. The invalidity or unenforceability of any provisions shall not affect any other part of this Air Waybill. Unless otherwise indicated.
FEDERAL EXPRESS CORPORATION, 3005 Corporate Avenue, Memphis, TN 38132, USA, is the first carrier of this shipment.

COLE SCHOTZ P.C.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
David R. Hurst
Daniel F.X. Geoghan

*Counsel to the SunEdison Litigation Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| SUNEDISON, INC., *et al.,* | : | Case No. 16-10992 (SMB) |
| Reorganized Debtors.[1] | : | (Jointly Administered) |
| | : | |
| SUNEDISON LITIGATION TRUST, | : | |
| Plaintiff, | : | Adv. Pro. No. 18-01248 (SMB) |
| – against – | : | |
| ABOGADOS Y ASESORES S. DE R.L. AND AGUILAR CASTILLO LOVE, | : | |
| Defendants. | : | |

---

[1]     The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's tax identification number, are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); EverStream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE Minnesota Holdings, LLC (8926); SunE MN Development Holdings, LLC (5388); SunE MN Development, LLC (8669); Terraform Private Holdings, LLC (5993); Hudson Energy Solar Corporation (3557); SunE REIT-D PR, LLC (5519); SunEdison Products, LLC (4445); SunEdison International Construction, LLC (9605); Vaughn Wind, LLC (4825); Maine Wind Holdings, LLC (1344); First Wind Energy, LLC (2171); First Wind Holdings, LLC (6257); and EchoFirst Finance Co., LLC (1607).  The address of the Reorganized Debtors' corporate headquarters is Two CityPlace Drive, 2nd floor, St. Louis, MO 63141.

**SECOND AMENDED COMPLAINT TO: (I) AVOID AND RECOVER
TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548 AND 550;
AND (II) DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502(d)**

The SunEdison Litigation Trust, the plaintiff herein (the "**Plaintiff**"), alleges that:

**NATURE OF THE CASE**

1.      Plaintiff seeks to avoid and recover from Defendants, or from any other person or entity for whose benefit the Preference Transfers[2] were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the Petition Date.  Subject to proof, Plaintiff also seeks to recover all fraudulent conveyances made to Defendants on or after September 1, 2015, pursuant to section 548 of the Bankruptcy Code.  To the extent that Defendants filed proofs of claim or have claims listed on the Debtors' schedules as undisputed, liquidated and not contingent, or otherwise requested payment from the Debtors or the Debtors' chapter 11 estates, this complaint is not intended to be, nor should it be construed as, a waiver of Plaintiff's right to object to such Claims for any reason, including pursuant to section 502 of the Bankruptcy Code, and such rights are expressly reserved.  Notwithstanding this reservation of rights, certain relief pursuant to section 502 of the Bankruptcy Code is sought by Plaintiff herein as further stated below.

**JURISDICTION AND VENUE**

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

3.      This adversary proceeding is brought pursuant to Rule 7001, *et seq*. of the Federal Rules of Bankruptcy Procedure and sections 502(d), 547, 548 and 550 of title 11 of United States Code, 11 U.S.C. § 101, *et seq*. (the "**Bankruptcy Code**").  Plaintiff consents to the

---

[2]      Unless otherwise stated, Capitalized terms used herein are defined elsewhere in this complaint.

entry of final orders or judgements by the Court if it is determined that the Court, absent consent

of the parties, cannot enter final orders or judgements consistent with Article III of the United

States Constitution.

4.       Venue in this Court is proper pursuant to 28 U.S.C. § 1409 as this

adversary proceeding arises under and in connection with a case under the Bankruptcy Code

which is pending in this District.

5.       This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (B), (F),

(H) and (O).

## **BACKGROUND**

**A.       The Parties**

6.       Beginning on April 21, 2016 (the "**Petition Date**"), the above-captioned

reorganized debtors (collectively, the "**Debtors**") filed voluntary petitions for relief under

chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern

District of New York (the "**Court**").

7.       On March 28, 2017, the Debtors filed their Joint Plan of Reorganization of

SunEdison, Inc. and its Debtor Affiliates [Docket No. 2671] (as amended from time to time, the

"**Plan**").

8.       On July 28, 2017, the Court entered the Findings of Facts, Conclusions of

Law and Order Confirming Second Amended Plan of Reorganization of SunEdison, Inc. and its

Debtor Affiliates [Docket No. 3735] (the "**Confirmation Order**"), thereby approving the Plan

and the GUC/Litigation Trust Agreement (the "**Litigation Trust Agreement**").

9.       On December 29, 2017, the Plan became effective [Docket No. 4495] (the

"**Effective Date**").

10.     Pursuant to the Plan, on the Effective Date, all of the Debtors' rights, title and interests in the GUC/Litigation Trust Causes of Action (as defined in the Plan), were transferred to Plaintiff.

11.     Pursuant to the Plan, Plaintiff was authorized, as the representative of the Debtors' estates, to pursue the GUC/Litigation Trust Causes of Action, including the causes of action asserted herein.

12.     Upon information and belief, Abogados Y Asesores S. De R.L. and Aguilar Castillo Love ("**Defendants**") were creditors of the Debtors prior to the Petition Date.

13.     Plaintiff retains the right to enforce, sue on, settle or compromise all causes of action belonging to Plaintiff, including claims under sections 502(d), 547, 548 and 550 of the Bankruptcy Code.

**B.      Events Leading to the Debtors' Financial Collapse**

14.     Beginning in May 2015, the Debtors announced a series of planned acquisitions (the "**Planned Acquisitions**") that gave rise to billions of dollars of funding commitments, which were layered on top of the nearly $10 billion in debt that SunEdison, Inc. ("**SunEdison**") was carrying at the end of the second quarter of 2015.  In particular, in May 2015, the Debtors announced an acquisition of South American renewable energy firm Latin America Power for approximately $700 million (the "**LAP Acquisition**").  Then, in July 2015, the Debtors announced an agreement to purchase twelve hydroelectric and wind projects in Brazil for approximately $4 billion from Renova Energia, S.A. ("**Renova**"), and to purchase $250 million in securities of Renova from a third party.  Finally, also in July 2015, the Debtors announced an agreement to purchase residential rooftop solar power provider Vivant Solar for $2.2 billion.  None of these transactions ultimately was consummated.

4

15.     Investors reacted negatively to the Debtors' acquisition plans—and the proposed Vivant transaction in particular. Indeed, between July 15, 2015 and August 31, 2015, SunEdison's stock value dropped 70%, while the stock values of companies in its peer group dropped just 10% to 15%. Thus, the drop in SunEdison's stock price was not attributable merely to market conditions, but rather was due to the Debtors' financial performance and capital structure.

16.     The market also punished the share price of SunEdison's "yieldco" subsidiary Terraform Power, Inc. ("**TERP**"), which in turn led to further deterioration in the Debtors' liquidity position. In particular, in late July or early August 2015, additional funding requirements arose in connection with margin call requirements on a $400 million loan agreement tied to the value of TERP shares, which had decreased in value by approximately 25% in July 2015. In response to these margin calls, the Debtors were required to deposit $152 million into an escrow account as collateral during the third quarter of 2015, and deposit an additional $91 million in October 2015.

17.     In early August 2015, just weeks after announcing the Vivant transaction, the Debtors sought to raise $300 million in much-needed capital through an initial public offering (IPO) of shares of Terraform Global, Inc. ("**Global**"). However, the IPO failed and the Debtors were forced to contribute $30 million to fund the IPO short-fall. Moreover, the IPO saddled the Debtors with ongoing post-IPO financial and operational support obligations. The failed IPO furthered the rapid deterioration in the Debtors' market capitalization and, as of late August 2015, several of SunEdison's debt issuances were trading substantially below par (65-75%).

5

18.     SunEdison's liquidity decreased during the third quarter of 2015 by approximately $200 million.  Specifically, SunEdison's "free" cash (excluding TERP and Global) declined from $461 million (as of June 30, 2015) to $308 million (as of September 30, 2015), and its availability under its first lien credit facility declined from $84 million (as of June 30, 2015) to $34 million (as of September 30, 2015).  The situation had become critical, as SunEdison's remaining cash was barely sufficient to cover its quarterly cash "burn" of $250-300 million required to fund certain project development costs (pre-construction) and corporate overhead expenses.  There was no cash left to fulfill other obligations, including those arising in connection with the Planned Acquisitions.  For instance, after SunEdison failed to make a $355 million upfront cash payment in September in connection with the LAP Acquisition, the deal fell apart and Latin America Power shareholders sued SunEdison for its failure to close the transaction.

19.     In short, by September 1, 2015—and indeed well before that—SunEdison and its affiliated Debtors were insolvent and/or were no longer able to pay their debts as they came due, and had entered into transactions (*i.e.*, the Planned Acquisitions) that they had no ability to consummate.  During their chapter 11 cases, the Debtors sold all of their assets for less than $2 billion, demonstrating just how severe the Debtors' financial crisis had become before they finally collapsed into chapter 11.

20.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers of an interest of the Debtors in property made to Defendants that may be recoverable under sections 547 or 548 of the Bankruptcy Code, including any transfers of an interest of the Debtors in property made to Defendants during the ninety (90) days preceding the Petition Date.  It is Plaintiff's intention to avoid and recover all

6

such transfers made by the Debtors.  Plaintiff reserves the right to amend this original complaint

to include: (i) further information regarding the Transfer(s); (ii) additional transfers; (iii)

modifications of and/or revision to Defendants' names; (iv) additional defendants; and /or (v)

additional causes of action (collectively, the "**Amendments**"), that may become known to

Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise,

and for the Amendments to relate back to this original complaint.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### (Avoidance and Recovery of Preferential Transfers)

21.     Plaintiff repeats, realleges and incorporates by reference the allegations

contained in all preceding paragraphs of this complaint as though set forth at length herein.

22.     On or within the ninety (90) days preceding the Petition Date, the Debtors,

as more particularly set forth on Exhibit A attached hereto, made, or caused to be made, one or

more transfers to or for the benefit of Defendants, which transfers are listed on Exhibit A

attached hereto and incorporated herein by reference (the "**Preference Transfers**").

23.     The Preference Transfers were of a property interest of the Debtors as

identified in Exhibit A.

24.     During the ninety days (90) preceding the Petition Date, Defendants were

creditors at the time of each Preference Transfer by virtue of supplying goods and/or services for

which the identified Debtors were obligated to pay following delivery.

25.     The Debtors made, or caused to be made, the Preference Transfers for, or

on account of, antecedent debt(s) owed by the Debtors before such Preference Transfers were

made.

26.     The Preference Transfers were made while the Debtors were insolvent.

7

27.    The Preference Transfers enabled Defendants to receive more than Defendants would have received if: (a) the Debtors' bankruptcy cases were administered under chapter 7 of the Bankruptcy Code; (b) the Preference Transfers had not been made; and (c) Defendants each received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

28.    Interest on the Preference Transfers has accrued and continues to accrue from the date each of the Preference Transfers was made.

29.    Defendants were the initial transferees of the Preference Transfers, or the entities for whose benefit the Preference Transfers were made, or were the immediate or mediate transferees of the initial transferee receiving the Preference Transfers.

30.    The Preference Transfers, to the extent they are avoided pursuant to section 547(b) of the Bankruptcy Code, may be recovered by Plaintiff pursuant to section 550(a)(1) of the Bankruptcy Code.

## SECOND CAUSE OF ACTION
### (Avoidance and Recovery of 90-Day Fraudulent Transfers)

31.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as though set forth at length herein.

32.    Plaintiff pleads in the alternative that to the extent one or more of the transfers as identified on Exhibit A were not on account of antecedent debt (such transfers, the "**90-Day Fraudulent Transfers**"), the Debtors did not receive reasonably equivalent value in exchange for such 90-Day Fraudulent Transfers; and

a.    The Debtors were insolvent on the dates that the 90-Day Fraudulent Transfers were made or became insolvent as a result of the 90-Day Fraudulent Transfers; or

8

b.    The Debtors engaged in business or a transaction, or were about to engage

in business or a transition, for which any property remaining with the

Debtors who made or for whose benefit the 90-Day Fraudulent Transfers

were made was an unreasonably small capital; or

c.    The Debtors intended to incur, or believed that the Debtors would incur,

debts that would be beyond the Debtors' ability to pay as such debts

matured.

33.    The 90-Day Fraudulent Transfers were made to or for the benefit of

Defendants within the one year prior to the Petition Date.

34.    The 90-Day Fraudulent Transfers, to the extent they are avoided pursuant

to section 548 of the Bankruptcy Code, may be recovered by Plaintiff pursuant to section

550(a)(1) of the Bankruptcy Code.

**THIRD CAUSE OF ACTION**
**(Avoidance and Recovery of Additional Fraudulent Transfers)**

35.    Plaintiff repeats, realleges and incorporates by reference the allegations

contained in all preceding paragraphs of this complaint as though set forth at length herein.

36.    The transfers identified on <u>Exhibit B</u> were not on account of antecedent

debt owed by the Debtor entity that made such transfers (such transfers, the "**Additional**

**Fraudulent Transfers**" and, collectively with the Preference Transfers and the 90-Day

Fraudulent Transfers, the "**Transfers**") and the Debtor that made such Additional Fraudulent

Transfers did not receive reasonably equivalent value in exchange for such Additional

Fraudulent Transfer(s); and

9

a.      The Debtors were insolvent on the date that the Additional Fraudulent

Transfers were made or became insolvent as a result of the Additional

Fraudulent Transfers; or

b.      The Debtors engaged in business or a transaction, or were about to engage

in business or a transition, for which any property remaining with the

Debtors who made or for whose benefit the Additional Fraudulent

Transfers were made was an unreasonably small capital; or

c.      The Debtors intended to incur, or believed that the Debtors would incur,

debts that would be beyond the Debtors' ability to pay as such debts

matured.

37.     The Additional Fraudulent Transfers were made to or for the benefit of

Defendants within the one year prior to the Petition Date.

38.     The Additional Fraudulent Transfers, to the extent they are avoided

pursuant to section 548 of the Bankruptcy Code, may be recovered by Plaintiff pursuant to

section 550(a)(1) of the Bankruptcy Code.

### FOURTH CAUSE OF ACTION
### (Disallowance of Claims)

39.     Plaintiff repeats, realleges and incorporates by reference the allegations

contained in all preceding paragraphs of this complaint as though set forth at length herein.

40.     Defendants are the recipient of the Transfers, which are recoverable

pursuant to sections 547, 548 and 550 of the Bankruptcy Code, and Defendants have not returned

the Transfers to Plaintiff.

41.     Based upon the foregoing and pursuant to section 502(d) of the

Bankruptcy Code, the claims, if any, asserted by Defendants against the Debtors (collectively,

10

the "**Claims**") must be disallowed since Defendants have not paid or surrendered the Transfers to Plaintiff.

WHEREFORE, Plaintiff prays that the Court enter a judgment against Defendants:

a.    On Plaintiff's First Cause of Action, in favor of Plaintiff and against Defendants in an amount not less than the amount of the Preference Transfers, plus interest from the date of such Preference Transfers until full payment is made to Plaintiff, together with the costs and expenses of this action, including, without limitation, attorneys' fees; and directing Defendants to turnover such sums to Plaintiff pursuant to sections 547(b) and 550(a) of the Bankruptcy Code;

b.    On Plaintiff's Second Cause of Action, in favor of Plaintiff and against Defendants in an amount not less than the amount of the 90-Day Fraudulent Transfers, plus interest from the date of such 90-Day Fraudulent Transfers until full payment is made to Plaintiff, together with the costs and expenses of this action, including, without limitation, attorneys' fees; and directing Defendants to turnover such sums to Plaintiff pursuant to sections 548(a)(1)(B) and 550(a) of the Bankruptcy Code;

*[Remainder of Page Intentionally Left Blank]*

      c.      On Plaintiff's Third Cause of Action, in favor of Plaintiff and against Defendants in an amount not less than the amount of the Additional Fraudulent Transfers, plus interest from the date of such Additional Fraudulent Transfers until full payment is made to Plaintiff, together with the costs and expenses of this action, including, without limitation, attorneys' fees; and directing Defendants to turnover such sums to Plaintiff pursuant to sections 548(a)(1)(B) and 550(a) of the Bankruptcy Code;

      d.      On Plaintiff's Fourth Cause of Action, in favor of Plaintiff and against Defendants disallowing the Claims pursuant to section 502(d) of the Bankruptcy Code unless and until Defendants returns the Transfers to Plaintiff; and

      e.      Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       October 3, 2018

**COLE SCHOTZ P.C.**

/s/ David R. Hurst
David R. Hurst
Daniel F.X. Geoghan
1325 Avenue of the Americas
19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393

*Counsel to the SunEdison Litigation Trust*

Debtors:          SunEdison, Inc., et al.
Case No.:         16-10992 (SMB)                                                    EXHIBIT A
Bankruptcy Court: Southern District of New York
Preference Period: 1/22/'16 to 4/20/16

| TRANSFEREE | TRANSFEROR | PAID INVOICE DATE | PAID INVOICE NUMBER | PAID INVOICE AMOUNT | PAYMENT DATE |
|---|---|---|---|---|---|
| ▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯ | NVT Licenses, LLC | 10/30/2015 | 2502323 | $ 5,624.45 | 1/27/20 |
| Aguilar Castillo Love | NVT Licenses, LLC | 10/30/2015 | 2502323 | $ 5,624.45 | 1/27/20 |
| | NVT Licenses, LLC | 9/30/2015 | 2501044 | $ 19,118.48 | 1/28/20 |
| | NVT Licenses, LLC | 10/30/2015 | 2502321 | $ 9,957.55 | 1/28/20 |
| | NVT Licenses, LLC | 10/30/2015 | 2502320 | $ 18,879.50 | 1/28/20 |
| | NVT Licenses, LLC | 11/30/2015 | SEIRSC_PO/2015/00208 | $ 1,247.10 | 1/28/20 |
| | NVT Licenses, LLC | 12/14/2015 | SEIRSC_PO/2015/00236 | $ 1,247.10 | 1/28/20 |
| | NVT Licenses, LLC | 11/30/2015 | 2503697 | $ 8,063.66 | 2/10/20 |
| | NVT Licenses, LLC | 11/30/2015 | 2503699 | $ 4,029.76 | 2/10/20 |
| | NVT Licenses, LLC | 11/30/2015 | 2503699 | $ 4,029.76 | 2/10/20 |
| | NVT Licenses, LLC | 12/14/2015 | SEIRSC_PO/2015/00236 | $ 1,247.10 | 2/11/20 |
| | NVT Licenses, LLC | 1/31/2016 | SEIRSC_PO/2016/00006 | $ 1,247.10 | 2/11/20 |
| | NVT Licenses, LLC | 2/24/2016 | SEIRSC_PO/2016/00023 | $ 1,247.10 | 2/25/20 |
| | NVT Licenses, LLC | 12/31/2015 | 2504958 | $ 1,759.23 | 2/25/20 |
| | NVT Licenses, LLC | 1/29/2016 | 2506359 | $ 2,279.56 | 2/25/20 |
| | NVT Licenses, LLC | 12/31/2015 | 2504958 | $ 1,759.23 | 2/25/20 |
| | NVT Licenses, LLC | 7/31/2014 | SEIRSC_PO/2014/00001 | $ 1,521.74 | 3/7/20 |
| | NVT Licenses, LLC | 11/30/2015 | 2503696 | $ 16,728.67 | 3/9/20 |
| | NVT Licenses, LLC | 12/31/2015 | 2504956 | $ 4,269.55 | 3/9/20 |
| | NVT Licenses, LLC | 12/31/2015 | 2504955 | $ 9,081.28 | 3/9/20 |
| | NVT Licenses, LLC | 1/29/2016 | 2506355 | $ 5,177.93 | 3/9/20 |
| | NVT Licenses, LLC | 3/10/2016 | SEIRSC_PO/2016/00051 | $ 1,247.10 | 3/14/20 |
| | NVT Licenses, LLC | 2/29/2016 | 2507860 | $ 1,809.18 | 3/14/20 |
| | SunEdison, Inc. | 4/8/2016 | INV040816 | $ 30,000.00 | 4/8/20 |
| | SunEdison, Inc. | | | $ - | 4/8/20 |
| | NVT Licenses, LLC | 3/31/2016 | 2509237 | $ 1,809.18 | 4/20/20 |

Debtors:            SunEdison, Inc., et al.
Case No.:           16-10992 (SMB)                                    EXHIBIT B
Bankruptcy Court:   Southern District of New York

| TRANSFEREE | TRANSFEROR | PAID INVOICE DATE | PAID INVOICE NUMBER | PAID INVOICE AMOUNT | PAYMENT DATE |
|---|---|---|---|---|---|
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | NVT Licenses, LLC | 7/31/2015 | 2413061 | $ 2,852.71 | 9/10/2015 |
| Aguilar Castillo Love | NVT Licenses, LLC | 7/31/2015 | 2413061 | $ 2,852.71 | 9/10/2015 |
| | NVT Licenses, LLC | 6/30/2015 | 2411608 | $ 14,816.83 | 9/11/2015 |
| | NVT Licenses, LLC | 7/7/2015 | 2411777 | $ 5,177.93 | 9/11/2015 |
| | NVT Licenses, LLC | 8/27/2015 | SEIRSC_PO/2015/00153 | $ 1,247.10 | 9/11/2015 |
| | NVT Licenses, LLC | 9/22/2015 | SEIRSC_PO/2015/00177 | $ 1,247.10 | 10/9/2015 |
| | NVT Licenses, LLC | 7/31/2015 | 2413096 | $ 4,747.77 | 10/27/2015 |
| | NVT Licenses, LLC | 8/31/2015 | 2414057 | $ 4,258.33 | 11/23/2015 |
| | NVT Licenses, LLC | 8/31/2015 | 2414255 | $ 3,647.52 | 11/23/2015 |
| | NVT Licenses, LLC | 8/31/2015 | 2414057 | $ 4,258.33 | 11/23/2015 |
| | NVT Licenses, LLC | 8/31/2015 | 2414255 | $ 3,647.52 | 11/23/2015 |
| | NVT Licenses, LLC | 7/31/2015 | 2413095 | $ 16,011.73 | 11/24/2015 |
| | NVT Licenses, LLC | 6/30/2015 | 2411612 | $ 1,613.94 | 12/10/2015 |
| | NVT Licenses, LLC | 9/30/2015 | 2501047 | $ 1,701.66 | 12/10/2015 |
| | NVT Licenses, LLC | 6/30/2015 | 2411612 | $ 1,613.94 | 12/10/2015 |
| | NVT Licenses, LLC | 9/30/2015 | 2501047 | $ 1,701.66 | 12/10/2015 |
| | NVT Licenses, LLC | 8/31/2015 | 2414054 | $ 9,001.62 | 12/11/2015 |
| | NVT Licenses, LLC | 8/31/2015 | 2414055 | $ 16,967.65 | 12/11/2015 |
| | NVT Licenses, LLC | 9/30/2015 | 2501045 | $ 9,718.57 | 1/11/2016 |
| | NVT Licenses, LLC | 10/31/2015 | SEIRSC_PO/2015/00201 | $ 1,247.10 | 1/11/2016 |

# UNITED STATES BANKRUPTCY COURT
## Southern District of New York

In re:

SUNEDISON, INC., *et al.*,

     Reorganized Debtors.

SUNEDISON LITIGATION TRUST,

          Plaintiff,

    -against-

ABOGADOS Y ASESORES S. DE R.L. and
AGUILAR CASTILLO LOVE,

          Defendants.

Chapter 11

Case No. 16-10992 (SMB)

(Jointly Administered)

Adv. Pro. No. 18-01248 (SMB)

## THIRD SUMMONS AND NOTICE OF PRETRIAL CONFERENCE IN
## AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 21 days after being served with this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days, to:

> **Clerk of the Court**
> **United States Bankruptcy Court, Southern District of New York**
> **One Bowling Green**
> **New York, New York 10004-1408**

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

> **David R. Hurst**
> **Daniel F.X. Geoghan**
> **Cole Schotz P.C.**
> **1325 Avenue of the Americas, 19th Floor**
> **New York, New York 10019**

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place:

| | |
|---|---|
| United States Bankruptcy Court<br>Southern District of New York<br>One Bowling Green<br>New York, New York 10004-1408 | Room: Courtroom 723 (SMB), One Bowling Green<br>New York, NY 10004-1408<br><br>Date and Time: **To Be Determined** |

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

Dated: 10/03/2018

                                 Vito Genna
                                 *Clerk of the Bankruptcy Court*

                                 /s/ Carmen Ortiz
                                 *Deputy Clerk*

FedEx Ship Manager - Print Your Label(s)



ORIGIN ID:SXYA    (212) 284-4069
VITO GENNA
UNITED STATES BANKRUPTCY COURT SDNY
ONE BOWLING GREEN

NEW YORK, NY 10004 US
SIGN: VITO GENNA

SHIP DATE: 09OCT18
ACTWGT: 0.10 LB
CAD: 110015479/INET4040

BILL SENDER
NO EEI 30.37(a)

TO ABOGADOS Y ASESORES S. DE R.L.
EDIFICIO ROFISA II
COL. LOMAS DEL GUIJARRO SUR
CALLE BARCELONA, BLOQUE, LOTE 15
TEGUCIGALPA  MDC                    (HN)

11111111111111111
INV:                REF: 57533-0001
PO:                 DEPT:

552.1L88FB0CA5

FedEx Express

E

TRK# 7734 3261 1921         INTL PRIORITY
0430

-HN



After printing this label:
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

LEGAL TERMS AND CONDITIONS OF FEDEX SHIPPING DEFINITIONS. On this Air Waybill, "we", "our", "us", and "FedEx" refer to Federal Express Corporation, its subsidiaries and branches and their respective employees, agents, and independent contractors. The terms "you" and "your" refer to the shipper, its employees, principals and agents. If your shipment originates outside the United States, your contract of carriage is with the FedEx subsidiary, branch or independent contractor who originally accepts the shipment from you. The term "package" means any container or envelope that is accepted by us for delivery, including any such items tendered by you utilizing our automated systems, meters, manifests or waybills. The term "shipment" means all packages which are tendered to and accepted by us on a single Air Waybill. CONVENTIONS. If you are shipping to or from a location outside the United States, the Warsaw Convention, as amended, may be applicable. The Warsaw Convention, as amended, may apply and limits our liability for loss, delay of, or damage to your shipment. The Warsaw Convention, as amended, limits FedEx's liability. For example in U.S. liability is limited to $9.07 per pound (20$ per kilogram), unless a higher value for carriage is declared as described below and you pay any applicable supplementary charges. NOTICE CONCERNING LIMITATIONS OF LIABILITY. TRANSPORT NOTICE. Shipments transported solely by road to or from a country which is a party to the Warsaw Convention or the Contract for the International Carriage of Goods by Road (the "CMR") are subject to the terms and conditions of the CMR, notwithstanding any other provision of the Air Waybill to the contrary. Shipments transported solely by road to or from a country which is a party to the Warsaw Convention or the Air Waybill to the terms and conditions of the CMR, notwithstanding any other provision of the Air Waybill to the contrary. CMR shall prevail. LIMITATIONS OF LIABILITY. If not governed by the Warsaw Convention, the CMR, or other international treaties, laws, other government regulations, orders, or requirements, FedEx's maximum liability for damage, loss, delay, shortage, mis-delivery, nondelivery, misinformation or failure to provide information in connection with your shipment is limited by this Agreement and as set out in the terms and conditions of carriage. Please refer to the contract of carriage set forth in the applicable FedEx Service Guide or tariff. Inasmuch as the rules of the CMR or the contractual limitation. FedEx does not provide cargo liability or all-risk insurance, but you may pay an additional charge for each additional U.S. $100 (or equivalent local currency for the country of origin) of declared value for carriage. If a higher value for carriage is declared and the additional charge is paid, FedEx's maximum liability will be the lesser of the declared value or the actual value. In no event does FedEx assume any liability, whether direct or indirect, special, incidental, or consequential damages, whether or not FedEx had knowledge that such damages might be incurred. FedEx won't be liable for your acts or omissions, including but not limited to improper or insufficient packaging, securing, marking or addressing of the shipment, or for the acts or omissions of the recipient or anyone else with an interest in the shipment. Moreover, the limits of liability set out in this agreement. FedEx won't be liable for damage, loss, delay, shortage, mis-delivery, non-delivery, misinformation or failure to provide information in connection with shipments of cash, currency or other prohibited items or in instances beyond our control, such as acts of God, perils of the air, weather conditions, mechanical delays, acts of public enemies, war, strike, civil commotion, or acts or omissions of public authorities (including customs and health officials) with actual or apparent authority. NO LIABILITY. We make no warranties, express or implied. CLAIMS FOR LOSS, DAMAGE OR DELAY. ALL CLAIMS MUST BE MADE IN WRITING AND WITHIN STRICT TIME LIMITS, SEE OUR TARIFF, APPLICABLE FEDEX SERVICE GUIDE, OR STANDARD CONDITIONS OF CARRIAGE FOR DETAILS. The Warsaw Convention provides specific notice periods within which a claim must be made. Right to damages against us shall be extinguished unless an action is brought within two years. Time periods set forth in the Convention apply. FedEx is not obligated to act on any claim until all transportation charges have been paid. The claim amount may not be deducted from the transportation charges. The recipient accepts the shipment without noting any damage on the delivery record, it will be assumed the shipment was delivered in good condition. In order for us to consider a claim, the contents, original shipping carton and packing must be made available to us for inspection. MANDATORY LAW. Insofar as any provision contained or referred to in this Air Waybill may be contrary to any applicable international treaties, laws, government regulations, orders, or requirements, such provisions shall remain in effect as part of this agreement to the extent that it is not overridden. The invalidity or unenforceability of any provisions shall not affect any other part of this Air Waybill. Unless otherwise indicated.
FEDERAL EXPRESS CORPORATION, 3005 Corporate Avenue, Memphis, TN 38132, USA is the first carrier of this shipment.

CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH

https://www.fedex.com/shipping/shipmentConfirmationAction.handle?method=doContinue

COLE SCHOTZ P.C.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
David R. Hurst
Daniel F.X. Geoghan

*Counsel to the SunEdison Litigation Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| SUNEDISON, INC., *et al.,* | : | Case No. 16-10992 (SMB) |
| Reorganized Debtors.[1] | : | (Jointly Administered) |
| | : | |
| SUNEDISON LITIGATION TRUST, | : | |
| Plaintiff, | : | Adv. Pro. No. 18-01248 (SMB) |
| – against – | : | |
| ABOGADOS Y ASESORES S. DE R.L. | : | |
| AND AGUILAR CASTILLO LOVE, | : | |
| Defendants. | : | |

---

[1]    The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's tax identification number, are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); EverStream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE Minnesota Holdings, LLC (8926); SunE MN Development Holdings, LLC (5388); SunE MN Development, LLC (8669); Terraform Private Holdings, LLC (5993); Hudson Energy Solar Corporation (3557); SunE REIT-D PR, LLC (5519); SunEdison Products, LLC (4445); SunEdison International Construction, LLC (9605); Vaughn Wind, LLC (4825); Maine Wind Holdings, LLC (1344); First Wind Energy, LLC (2171); First Wind Holdings, LLC (6257); and EchoFirst Finance Co., LLC (1607). The address of the Reorganized Debtors' corporate headquarters is Two CityPlace Drive, 2nd floor, St. Louis, MO 63141.

**SECOND AMENDED COMPLAINT TO: (I) AVOID AND RECOVER
TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548 AND 550;
AND (II) DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502(d)**

The SunEdison Litigation Trust, the plaintiff herein (the "**Plaintiff**"), alleges that:

**NATURE OF THE CASE**

1.      Plaintiff seeks to avoid and recover from Defendants, or from any other person or entity for whose benefit the Preference Transfers[2] were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the Petition Date.  Subject to proof, Plaintiff also seeks to recover all fraudulent conveyances made to Defendants on or after September 1, 2015, pursuant to section 548 of the Bankruptcy Code.  To the extent that Defendants filed proofs of claim or have claims listed on the Debtors' schedules as undisputed, liquidated and not contingent, or otherwise requested payment from the Debtors or the Debtors' chapter 11 estates, this complaint is not intended to be, nor should it be construed as, a waiver of Plaintiff's right to object to such Claims for any reason, including pursuant to section 502 of the Bankruptcy Code, and such rights are expressly reserved.  Notwithstanding this reservation of rights, certain relief pursuant to section 502 of the Bankruptcy Code is sought by Plaintiff herein as further stated below.

**JURISDICTION AND VENUE**

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

3.      This adversary proceeding is brought pursuant to Rule 7001, *et seq*. of the Federal Rules of Bankruptcy Procedure and sections 502(d), 547, 548 and 550 of title 11 of United States Code, 11 U.S.C. § 101, *et seq*. (the "**Bankruptcy Code**").  Plaintiff consents to the

---

[2]      Unless otherwise stated, Capitalized terms used herein are defined elsewhere in this complaint.

entry of final orders or judgements by the Court if it is determined that the Court, absent consent

of the parties, cannot enter final orders or judgements consistent with Article III of the United

States Constitution.

4.      Venue in this Court is proper pursuant to 28 U.S.C. § 1409 as this

adversary proceeding arises under and in connection with a case under the Bankruptcy Code

which is pending in this District.

5.      This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (B), (F),

(H) and (O).

## **BACKGROUND**

## A.      **The Parties**

6.      Beginning on April 21, 2016 (the "**Petition Date**"), the above-captioned

reorganized debtors (collectively, the "**Debtors**") filed voluntary petitions for relief under

chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern

District of New York (the "**Court**").

7.      On March 28, 2017, the Debtors filed their Joint Plan of Reorganization of

SunEdison, Inc. and its Debtor Affiliates [Docket No. 2671] (as amended from time to time, the

"**Plan**").

8.      On July 28, 2017, the Court entered the Findings of Facts, Conclusions of

Law and Order Confirming Second Amended Plan of Reorganization of SunEdison, Inc. and its

Debtor Affiliates [Docket No. 3735] (the "**Confirmation Order**"), thereby approving the Plan

and the GUC/Litigation Trust Agreement (the "**Litigation Trust Agreement**").

9.      On December 29, 2017, the Plan became effective [Docket No. 4495] (the

"**Effective Date**").

10.     Pursuant to the Plan, on the Effective Date, all of the Debtors' rights, title and interests in the GUC/Litigation Trust Causes of Action (as defined in the Plan), were transferred to Plaintiff.

11.     Pursuant to the Plan, Plaintiff was authorized, as the representative of the Debtors' estates, to pursue the GUC/Litigation Trust Causes of Action, including the causes of action asserted herein.

12.     Upon information and belief, Abogados Y Asesores S. De R.L. and Aguilar Castillo Love ("**Defendants**") were creditors of the Debtors prior to the Petition Date.

13.     Plaintiff retains the right to enforce, sue on, settle or compromise all causes of action belonging to Plaintiff, including claims under sections 502(d), 547, 548 and 550 of the Bankruptcy Code.

**B.      Events Leading to the Debtors' Financial Collapse**

14.     Beginning in May 2015, the Debtors announced a series of planned acquisitions (the "**Planned Acquisitions**") that gave rise to billions of dollars of funding commitments, which were layered on top of the nearly $10 billion in debt that SunEdison, Inc. ("**SunEdison**") was carrying at the end of the second quarter of 2015.  In particular, in May 2015, the Debtors announced an acquisition of South American renewable energy firm Latin America Power for approximately $700 million (the "**LAP Acquisition**").  Then, in July 2015, the Debtors announced an agreement to purchase twelve hydroelectric and wind projects in Brazil for approximately $4 billion from Renova Energia, S.A. ("**Renova**"), and to purchase $250 million in securities of Renova from a third party.  Finally, also in July 2015, the Debtors announced an agreement to purchase residential rooftop solar power provider Vivant Solar for $2.2 billion.  None of these transactions ultimately was consummated.

15.    Investors reacted negatively to the Debtors' acquisition plans—and the proposed Vivant transaction in particular.  Indeed, between July 15, 2015 and August 31, 2015, SunEdison's stock value dropped 70%, while the stock values of companies in its peer group dropped just 10% to 15%.  Thus, the drop in SunEdison's stock price was not attributable merely to market conditions, but rather was due to the Debtors' financial performance and capital structure.

16.    The market also punished the share price of SunEdison's "yieldco" subsidiary Terraform Power, Inc. ("**TERP**"), which in turn led to further deterioration in the Debtors' liquidity position.  In particular, in late July or early August 2015, additional funding requirements arose in connection with margin call requirements on a $400 million loan agreement tied to the value of TERP shares, which had decreased in value by approximately 25% in July 2015.  In response to these margin calls, the Debtors were required to deposit $152 million into an escrow account as collateral during the third quarter of 2015, and deposit an additional $91 million in October 2015.

17.    In early August 2015, just weeks after announcing the Vivant transaction, the Debtors sought to raise $300 million in much-needed capital through an initial public offering (IPO) of shares of Terraform Global, Inc. ("**Global**").  However, the IPO failed and the Debtors were forced to contribute $30 million to fund the IPO short-fall.  Moreover, the IPO saddled the Debtors with ongoing post-IPO financial and operational support obligations.  The failed IPO furthered the rapid deterioration in the Debtors' market capitalization and, as of late August 2015, several of SunEdison's debt issuances were trading substantially below par (65-75%).

5

18.     SunEdison's liquidity decreased during the third quarter of 2015 by approximately $200 million.  Specifically, SunEdison's "free" cash (excluding TERP and Global) declined from $461 million (as of June 30, 2015) to $308 million (as of September 30, 2015), and its availability under its first lien credit facility declined from $84 million (as of June 30, 2015) to $34 million (as of September 30, 2015).  The situation had become critical, as SunEdison's remaining cash was barely sufficient to cover its quarterly cash "burn" of $250-300 million required to fund certain project development costs (pre-construction) and corporate overhead expenses.  There was no cash left to fulfill other obligations, including those arising in connection with the Planned Acquisitions.  For instance, after SunEdison failed to make a $355 million upfront cash payment in September in connection with the LAP Acquisition, the deal fell apart and Latin America Power shareholders sued SunEdison for its failure to close the transaction.

19.     In short, by September 1, 2015—and indeed well before that—SunEdison and its affiliated Debtors were insolvent and/or were no longer able to pay their debts as they came due, and had entered into transactions (*i.e.*, the Planned Acquisitions) that they had no ability to consummate.  During their chapter 11 cases, the Debtors sold all of their assets for less than $2 billion, demonstrating just how severe the Debtors' financial crisis had become before they finally collapsed into chapter 11.

20.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers of an interest of the Debtors in property made to Defendants that may be recoverable under sections 547 or 548 of the Bankruptcy Code, including any transfers of an interest of the Debtors in property made to Defendants during the ninety (90) days preceding the Petition Date.  It is Plaintiff's intention to avoid and recover all

6

such transfers made by the Debtors.  Plaintiff reserves the right to amend this original complaint

to include: (i) further information regarding the Transfer(s); (ii) additional transfers; (iii)

modifications of and/or revision to Defendants' names; (iv) additional defendants; and /or (v)

additional causes of action (collectively, the "**Amendments**"), that may become known to

Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise,

and for the Amendments to relate back to this original complaint.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### (Avoidance and Recovery of Preferential Transfers)

21.     Plaintiff repeats, realleges and incorporates by reference the allegations

contained in all preceding paragraphs of this complaint as though set forth at length herein.

22.     On or within the ninety (90) days preceding the Petition Date, the Debtors,

as more particularly set forth on Exhibit A attached hereto, made, or caused to be made, one or

more transfers to or for the benefit of Defendants, which transfers are listed on Exhibit A

attached hereto and incorporated herein by reference (the "**Preference Transfers**").

23.     The Preference Transfers were of a property interest of the Debtors as

identified in Exhibit A.

24.     During the ninety days (90) preceding the Petition Date, Defendants were

creditors at the time of each Preference Transfer by virtue of supplying goods and/or services for

which the identified Debtors were obligated to pay following delivery.

25.     The Debtors made, or caused to be made, the Preference Transfers for, or

on account of, antecedent debt(s) owed by the Debtors before such Preference Transfers were

made.

26.     The Preference Transfers were made while the Debtors were insolvent.

7

27.     The Preference Transfers enabled Defendants to receive more than Defendants would have received if: (a) the Debtors' bankruptcy cases were administered under chapter 7 of the Bankruptcy Code; (b) the Preference Transfers had not been made; and (c) Defendants each received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

28.     Interest on the Preference Transfers has accrued and continues to accrue from the date each of the Preference Transfers was made.

29.     Defendants were the initial transferees of the Preference Transfers, or the entities for whose benefit the Preference Transfers were made, or were the immediate or mediate transferees of the initial transferee receiving the Preference Transfers.

30.     The Preference Transfers, to the extent they are avoided pursuant to section 547(b) of the Bankruptcy Code, may be recovered by Plaintiff pursuant to section 550(a)(1) of the Bankruptcy Code.

## SECOND CAUSE OF ACTION
### (Avoidance and Recovery of 90-Day Fraudulent Transfers)

31.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as though set forth at length herein.

32.     Plaintiff pleads in the alternative that to the extent one or more of the transfers as identified on Exhibit A were not on account of antecedent debt (such transfers, the "**90-Day Fraudulent Transfers**"), the Debtors did not receive reasonably equivalent value in exchange for such 90-Day Fraudulent Transfers; and

a.      The Debtors were insolvent on the dates that the 90-Day Fraudulent Transfers were made or became insolvent as a result of the 90-Day Fraudulent Transfers; or

b.      The Debtors engaged in business or a transaction, or were about to engage

in business or a transition, for which any property remaining with the

Debtors who made or for whose benefit the 90-Day Fraudulent Transfers

were made was an unreasonably small capital; or

c.      The Debtors intended to incur, or believed that the Debtors would incur,

debts that would be beyond the Debtors' ability to pay as such debts

matured.

33.      The 90-Day Fraudulent Transfers were made to or for the benefit of

Defendants within the one year prior to the Petition Date.

34.      The 90-Day Fraudulent Transfers, to the extent they are avoided pursuant

to section 548 of the Bankruptcy Code, may be recovered by Plaintiff pursuant to section

550(a)(1) of the Bankruptcy Code.

### THIRD CAUSE OF ACTION
**(Avoidance and Recovery of Additional Fraudulent Transfers)**

35.      Plaintiff repeats, realleges and incorporates by reference the allegations

contained in all preceding paragraphs of this complaint as though set forth at length herein.

36.      The transfers identified on <u>Exhibit B</u> were not on account of antecedent

debt owed by the Debtor entity that made such transfers (such transfers, the "**Additional**

**Fraudulent Transfers**" and, collectively with the Preference Transfers and the 90-Day

Fraudulent Transfers, the "**Transfers**") and the Debtor that made such Additional Fraudulent

Transfers did not receive reasonably equivalent value in exchange for such Additional

Fraudulent Transfer(s); and

9

a.  The Debtors were insolvent on the date that the Additional Fraudulent Transfers were made or became insolvent as a result of the Additional Fraudulent Transfers; or

b.  The Debtors engaged in business or a transaction, or were about to engage in business or a transition, for which any property remaining with the Debtors who made or for whose benefit the Additional Fraudulent Transfers were made was an unreasonably small capital; or

c.  The Debtors intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

37.    The Additional Fraudulent Transfers were made to or for the benefit of Defendants within the one year prior to the Petition Date.

38.    The Additional Fraudulent Transfers, to the extent they are avoided pursuant to section 548 of the Bankruptcy Code, may be recovered by Plaintiff pursuant to section 550(a)(1) of the Bankruptcy Code.

## FOURTH CAUSE OF ACTION
### (Disallowance of Claims)

39.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as though set forth at length herein.

40.    Defendants are the recipient of the Transfers, which are recoverable pursuant to sections 547, 548 and 550 of the Bankruptcy Code, and Defendants have not returned the Transfers to Plaintiff.

41.    Based upon the foregoing and pursuant to section 502(d) of the Bankruptcy Code, the claims, if any, asserted by Defendants against the Debtors (collectively,

the "**Claims**") must be disallowed since Defendants have not paid or surrendered the Transfers to Plaintiff.

WHEREFORE, Plaintiff prays that the Court enter a judgment against Defendants:

a.      On Plaintiff's First Cause of Action, in favor of Plaintiff and against Defendants in an amount not less than the amount of the Preference Transfers, plus interest from the date of such Preference Transfers until full payment is made to Plaintiff, together with the costs and expenses of this action, including, without limitation, attorneys' fees; and directing Defendants to turnover such sums to Plaintiff pursuant to sections 547(b) and 550(a) of the Bankruptcy Code;

b.      On Plaintiff's Second Cause of Action, in favor of Plaintiff and against Defendants in an amount not less than the amount of the 90-Day Fraudulent Transfers, plus interest from the date of such 90-Day Fraudulent Transfers until full payment is made to Plaintiff, together with the costs and expenses of this action, including, without limitation, attorneys' fees; and directing Defendants to turnover such sums to Plaintiff pursuant to sections 548(a)(1)(B) and 550(a) of the Bankruptcy Code;

*[Remainder of Page Intentionally Left Blank]*

   c.  On Plaintiff's Third Cause of Action, in favor of Plaintiff and against

Defendants in an amount not less than the amount of the Additional Fraudulent Transfers, plus

interest from the date of such Additional Fraudulent Transfers until full payment is made to

Plaintiff, together with the costs and expenses of this action, including, without limitation,

attorneys' fees; and directing Defendants to turnover such sums to Plaintiff pursuant to sections

548(a)(1)(B) and 550(a) of the Bankruptcy Code;

   d.  On Plaintiff's Fourth Cause of Action, in favor of Plaintiff and against

Defendants disallowing the Claims pursuant to section 502(d) of the Bankruptcy Code unless

and until Defendants returns the Transfers to Plaintiff; and

   e.  Granting such other and further relief as the Court may deem just and

proper.


Dated: New York, New York
   October 3, 2018

             **COLE SCHOTZ P.C.**


             /s/ David R. Hurst
             David R. Hurst
             Daniel F.X. Geoghan
             1325 Avenue of the Americas
             19th Floor
             New York, New York 10019
             Telephone: (212) 752-8000
             Facsimile: (212) 752-8393

             *Counsel to the SunEdison Litigation Trust*

Debtors:            SunEdison, Inc., et al.
Case No.:          16-10992 (SMB)                                        EXHIBIT A
Bankruptcy Court:  Southern District of New York
Preference Period: 1/22/'16 to 4/20/16

| TRANSFEREE | TRANSFEROR | PAID INVOICE DATE | PAID INVOICE NUMBER | PAID INVOICE AMOUNT | PAYMENT DATE |
|---|---|---|---|---|---|
| ▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯<br>Aguilar Castillo Love | NVT Licenses, LLC | 10/30/2015 | 2502323 | $ 5,624.45 | 1/27/201 |
| | NVT Licenses, LLC | 10/30/2015 | 2502323 | $ 5,624.45 | 1/27/201 |
| | NVT Licenses, LLC | 9/30/2015 | 2501044 | $ 19,118.48 | 1/28/201 |
| | NVT Licenses, LLC | 10/30/2015 | 2502321 | $ 9,957.55 | 1/28/201 |
| | NVT Licenses, LLC | 10/30/2015 | 2502320 | $ 18,879.50 | 1/28/201 |
| | NVT Licenses, LLC | 11/30/2015 | SEIRSC_PO/2015/00208 | $ 1,247.10 | 1/28/201 |
| | NVT Licenses, LLC | 12/14/2015 | SEIRSC_PO/2015/00236 | $ 1,247.10 | 1/28/201 |
| | NVT Licenses, LLC | 11/30/2015 | 2503697 | $ 8,063.66 | 2/10/201 |
| | NVT Licenses, LLC | 11/30/2015 | 2503699 | $ 4,029.76 | 2/10/201 |
| | NVT Licenses, LLC | 11/30/2015 | 2503699 | $ 4,029.76 | 2/10/201 |
| | NVT Licenses, LLC | 12/14/2015 | SEIRSC_PO/2015/00236 | $ 1,247.10 | 2/11/201 |
| | NVT Licenses, LLC | 1/31/2016 | SEIRSC_PO/2016/00006 | $ 1,247.10 | 2/11/201 |
| | NVT Licenses, LLC | 2/24/2016 | SEIRSC_PO/2016/00023 | $ 1,247.10 | 2/25/201 |
| | NVT Licenses, LLC | 12/31/2015 | 2504958 | $ 1,759.23 | 2/25/201 |
| | NVT Licenses, LLC | 1/29/2016 | 2506359 | $ 2,279.56 | 2/25/201 |
| | NVT Licenses, LLC | 12/31/2015 | 2504958 | $ 1,759.23 | 2/25/201 |
| | NVT Licenses, LLC | 7/31/2014 | SEIRSC_PO/2014/00001 | $ 1,521.74 | 3/7/201 |
| | NVT Licenses, LLC | 11/30/2015 | 2503696 | $ 16,728.67 | 3/9/201 |
| | NVT Licenses, LLC | 12/31/2015 | 2504956 | $ 4,269.55 | 3/9/201 |
| | NVT Licenses, LLC | 12/31/2015 | 2504955 | $ 9,081.28 | 3/9/201 |
| | NVT Licenses, LLC | 1/29/2016 | 2506355 | $ 5,177.93 | 3/9/201 |
| | NVT Licenses, LLC | 3/10/2016 | SEIRSC_PO/2016/00051 | $ 1,247.10 | 3/14/201 |
| | NVT Licenses, LLC | 2/29/2016 | 2507860 | $ 1,809.18 | 3/14/201 |
| | SunEdison, Inc. | 4/8/2016 | INV040816 | $ 30,000.00 | 4/8/201 |
| | SunEdison, Inc. | | | $ - | 4/8/201 |
| | NVT Licenses, LLC | 3/31/2016 | 2509237 | $ 1,809.18 | 4/20/201 |

Debtors:            SunEdison, Inc., et al.
Case No.:           16-10992 (SMB)                                    EXHIBIT B
Bankruptcy Court:   Southern District of New York

| TRANSFEREE | TRANSFEROR | PAID INVOICE DATE | PAID INVOICE NUMBER | PAID INVOICE AMOUNT | PAYMENT DATE |
|---|---|---|---|---|---|
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br>Aguilar Castillo Love | NVT Licenses, LLC | 7/31/2015 | 2413061 | $ 2,852.71 | 9/10/2015 |
| | NVT Licenses, LLC | 7/31/2015 | 2413061 | $ 2,852.71 | 9/10/2015 |
| | NVT Licenses, LLC | 6/30/2015 | 2411608 | $ 14,816.83 | 9/11/2015 |
| | NVT Licenses, LLC | 7/7/2015 | 2411777 | $ 5,177.93 | 9/11/2015 |
| | NVT Licenses, LLC | 8/27/2015 | SEIRSC_PO/2015/00153 | $ 1,247.10 | 9/11/2015 |
| | NVT Licenses, LLC | 9/22/2015 | SEIRSC_PO/2015/00177 | $ 1,247.10 | 10/9/2015 |
| | NVT Licenses, LLC | 7/31/2015 | 2413096 | $ 4,747.77 | 10/27/2015 |
| | NVT Licenses, LLC | 8/31/2015 | 2414057 | $ 4,258.33 | 11/23/2015 |
| | NVT Licenses, LLC | 8/31/2015 | 2414255 | $ 3,647.52 | 11/23/2015 |
| | NVT Licenses, LLC | 8/31/2015 | 2414057 | $ 4,258.33 | 11/23/2015 |
| | NVT Licenses, LLC | 8/31/2015 | 2414255 | $ 3,647.52 | 11/23/2015 |
| | NVT Licenses, LLC | 7/31/2015 | 2413095 | $ 16,011.73 | 11/24/2015 |
| | NVT Licenses, LLC | 6/30/2015 | 2411612 | $ 1,613.94 | 12/10/2015 |
| | NVT Licenses, LLC | 9/30/2015 | 2501047 | $ 1,701.66 | 12/10/2015 |
| | NVT Licenses, LLC | 6/30/2015 | 2411612 | $ 1,613.94 | 12/10/2015 |
| | NVT Licenses, LLC | 9/30/2015 | 2501047 | $ 1,701.66 | 12/10/2015 |
| | NVT Licenses, LLC | 8/31/2015 | 2414054 | $ 9,001.62 | 12/11/2015 |
| | NVT Licenses, LLC | 8/31/2015 | 2414055 | $ 16,967.65 | 12/11/2015 |
| | NVT Licenses, LLC | 9/30/2015 | 2501045 | $ 9,718.57 | 1/11/2016 |
| | NVT Licenses, LLC | 10/31/2015 | SEIRSC_PO/2015/00201 | $ 1,247.10 | 1/11/2016 |

# UNITED STATES BANKRUPTCY COURT
## Southern District of New York

In re:

SUNEDISON, INC., *et al.*,

      Reorganized Debtors.

SUNEDISON LITIGATION TRUST,

              Plaintiff,

   -against-

ABOGADOS Y ASESORES S. DE R.L. and
AGUILAR CASTILLO LOVE,

           Defendants.

Chapter 11

Case No. 16-10992 (SMB)

(Jointly Administered)

Adv. Pro. No. 18-01248 (SMB)

## THIRD SUMMONS AND NOTICE OF PRETRIAL CONFERENCE IN
## AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 21 days after being served with this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days, to:

> **Clerk of the Court**
> **United States Bankruptcy Court, Southern District of New York**
> **One Bowling Green**
> **New York, New York 10004-1408**

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

> **David R. Hurst**
> **Daniel F.X. Geoghan**
> **Cole Schotz P.C.**
> **1325 Avenue of the Americas, 19th Floor**
> **New York, New York 10019**

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place:

| | |
|---|---|
| United States Bankruptcy Court<br>Southern District of New York<br>One Bowling Green<br>New York, New York 10004-1408 | Room: Courtroom 723 (SMB), One Bowling Green<br>New York, NY 10004-1408<br><br>Date and Time: **To Be Determined** |

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

Dated: <u>10/03/2018</u>

<u>Vito Genna</u>
*Clerk of the Bankruptcy Court*

<u>/s/ Carmen Ortiz</u>
*Deputy Clerk*